Ron Rogers was able to do something that evaded DESA's engineers for years. Ron Rogers was able to develop and patent a pole saw, chainsaw combination that DESA had tried to make and was unable to make, even though they admitted they were aware of the prior art for decades. Mr. Rogers filed his patent application and obtained patent protection and brought an action against DESA for patent infringement. The district court invalidated the patent under 35 U.S.C. 103 for obviousness. Rogers asserts that the district court committed reversible error by deciding factual issues against Rogers. The first factual issue decided against Rogers relates to the scope and content of the prior art. The primary reference at the district court level was the Moore reference. There was a dispute as to what Moore shows. DESA's expert, Mr. Radcliffe, testified and provided an affidavit that the Moore reference showed a chainsaw. Rogers submitted counter evidence by way of affidavit that shows that the Moore reference does not show a chainsaw on the end of the pole, and nor does the pole appear to be functionally able to handle a chainsaw, which would leave one skilled in the art away from using Moore in the combination. What is the inventive concept here of the patent? The inventive concept is what is in the claim. It's the combination of each of the elements that allows a chainsaw to be releasably mounted on the end of a telescoping pole and all the attributes that go with it. And what is your position about what is different in this patent that was outside of the prior art, not included? None of the prior art shows the specific combination claimed in Rogers' patent. That is a removable chainsaw on a telescoping pole that has an adjustable length cord. It also includes a trigger depression device that holds the chainsaw that's remotely located in the depressed on position and includes a second functionally operative trigger or switch at the bottom of the pole that the user can manually operate. So all of the pieces are there. So is your position really that there was no motivation to combine all of these pieces? You're not suggesting that none of the parts that you've just described were in the prior art. The prior art has the pieces, that's correct. The Cossie reference, for example, has some of the features, but each of the references, as we set forth in our brief, is missing at least three of the elements. What's Cossie missing? Cossie has the chainsaw, it has the trigger, as far as I can tell, it has the pole, and it has the bracket. What's it missing? It doesn't have an adjustable length pole. So it's the telescoping pole that's missing from Cossie? And the coupling nut and the adjustable length cord. Those are the three elements that are missing in Cossie. Adjustable length cord. When you say adjustable length cord, do you mean the spiral cord that goes through the inside of the pole? That's the Rogers environment is a spiral length cord, that's correct. Now, Desta has taken the position, and one of the things that I'd like to address today is that the Rogers affidavit conflicts with earlier deposition testimony that he presented, ostensibly related to the Moore reference. Let me ask you one other question. There is, in some of the briefs, back and forth, discussion of the problem that whether the pole is strong enough. I think Mr. Rogers suggested that the pole in Moore didn't look strong enough to hold a chainsaw. And there's some suggestion on the other side that it was after the stronger, cheaper, telescoping pole was discovered that that's when the accused device was commercially made. There's nothing that I can see in Mr. Rogers' invention that has anything to do with the strengthening of the pole. Is that correct? There's nothing in the patent application that talks about the strengthening of the pole. So whether you have a weak pole or a strong pole, it would anticipate or infringe either way, as long as it was a pole that was telescoping, right? Well, I understand your point, but I think the argument about the weakness of the pole goes to whether or not the pole that's used in connection with a device that's not a chainsaw can be substituted for a device that is a chainsaw. Well, I'm not sure I understand your answer. If Mr. Rogers did not contribute any, there was no aspect of his invention that involved a pole of particular design, other than that it's telescoping, wouldn't any device with any pole that was connected to a chainsaw, as long as it was a telescoping pole, infringe? You wouldn't say, gosh, this is really weak. It's not going to hold up more than a couple of months with heavy use. It's too weak a pole, therefore it doesn't infringe. I would have to agree with your promises on infringement, that's correct. And therefore also anticipation or obviousness, right? Well, except the question here relates to whether there's a suggestion to combine a specific piece of prior art that doesn't necessarily relate to the inventive technology, the chainsaw technology. The piece of prior art in question is used for a hedge trimmer, and there's a question as to whether or not one skilled in the chain pole saw would look to a device for a hedge trimmer where the inventive pole there includes elements which would take it out of the realm of being useful for a chainsaw. Mr. Hoffman, one of the points that you stress is your sense that the trial court didn't consider your evidence, your objective considerations, and you refer particularly to the failure of others. Would you tell us where the flaw lay in your view? Yes, there's a plethora of authority from this court that says you need to examine all, if the evidence of secondary considerations exists, it must be considered as part of the analysis. Here the district court paid lip service to everything other than the commercial success. It evaluated the commercial success and said, I find that no amount of commercial success can overcome the finding, by prima facie, the finding of obviousness. But here, particularly the advanced display system case at 2-12-F-2-12-72 sheds light on the issue. It says that the court has stated that evidence of failed attempts by others could be determinative of the issue of obviousness by itself. In fact, citing the earlier Panduit decisions, it says that a competitor's failure to develop the patented invention suggests obviousness. Did you cite that case in your brief? No, this is a supplemental citation. The advanced display case is a supplemental citation. And the Panduit case said that failure by others, including the accused infringer, which is what happened here, to develop the claim invention, even though it was aware of all the prior art, they admit they were aware of all the prior art since 1989, and yet failed to develop the invention, is virtually irrefutable evidence of non-obviousness. Here, the district court did not consider the long-felt need, the trials and failures of DESA, and I would submit that the failure of DESA was not because of a heavy pole saw. Nowhere in the record is there any drawing or any corroboration from anybody other than a disinterested witness that DESA claims to have made a two-piece chainsaw pole saw design. Everything we cite and show in the record was a different developmental path that they abandoned in 1983. Now, Mr. Fisher from Home Depot, another interested party, stated that he saw in late 1995 or early 1996 a design by DESA, but he didn't like it because it was too heavy. Now, I suggest that his declaration conflicts with the facts as admitted by DESA. For example, the Janssen Declaration at 885, again, the documents are belied by the only documentary evidence. They have no documents to corroborate their idea. Further, the memo that we cited… I'm sorry. Could you go back and explain what exactly is the point you were making about Janssen? The point that I'm making about Janssen is that it does not corroborate DESA's story that they had the two-piece pole saw design, and I say it actually conflicts with the other admissions DESA has made in the record about what they had and when they had it. You haven't mentioned copying. I thought you were talking about long-felt need. Is that in the context of long-felt need, or is that in the context of copying? It goes to both. It shows that DESA was working on it. My discussion here talks about DESA has been working on the device since the 1970s, admittedly so. They were aware of all the priorities since 1989 and couldn't do it. So there's the trials and failures. There is this evidence of copying that DESA did try to counter by submitting this declaration of Mr. Janssen, and I submit that it conflicts with the other statements that DESA has made. Particularly, the memo at 270 and Mr. Rohr at 854 says that DESA ceased all work on their developmental project in 1993. That's when they stopped doing it. Mr. Fisher at A784 and Mr. Rohr at A854 says the project was not even resurrected until August of 1996. This is even spelled out in DESA's brief at 55. But Janssen says that he saw a saw in late 1995 or early 1996. This occurred during a time period where DESA admits they weren't even working on the project. It lay dormant since 1993, not to be resurrected until after Mr. Janssen says he saw the product. So I believe that what the record does support is that Mr. Rogers showed DESA a videotape in 1996 in about the October time period. October 15th, right? Correct. Right, but that was after the August 1996 hardware show that I guess it's Rohr who testified, right? That's correct. Okay, which is what Rohr says, I see this Mr. Longarm and this is the pole we've been looking for. Correct. He said that's the point at which they started back up. I agree, that's what he said. And you just think that that's implausible? But Mr. Janssen said I saw a pole in 1995 from Home Depot that was ready for sale in our store. That's before Mr. Rohr even says that they were working on it. I'm missing what's inconsistent about those two things. Mr. Janssen said there was a pole in our store and Mr. Rohr didn't see a pole until August of 1996. Mr. Janssen says that Mr. Janssen was proffered to support the position that DESA had the combination of the two-piece design that they later came out with with the heavier saw. And I'm suggesting that his testimony conflicts with Rohr. They never had the two-piece design. It wasn't even resurrected, the project, supposedly until August of 1996. All of that considered, DESA says in 1995 when they met with Mr. Janssen, they were ready to market the product. But there's not a single drawing to suggest that they were ready to market the product. There's nothing in the record that shows they even had the design. So I submit that none of the evidence corroborates the story. It was only after Rogers showed them the two-piece pole saw design in the videotape that DESA was able to resurrect the project and make what had evaded their engineers for years. So this was summary judgment. Are you saying that summary judgment was improper or that the failure to consider the secondary considerations was improper? I'm saying there's a couple of reasons why the summary judgment was improvidently granted. First, there's a dispute as to the scope and content of the prior, namely the Mohr reference itself. Secondly, on the legal conclusion, the district court failed to consider relevant and pertinent evidence of secondary considerations. Okay, let's hear from the other side. And if you have some time left, we'll give you enough rebuttal time. Thank you. Mr. Witkoff, you can see the issues which are troubling me at least. My answer, Your Honor, is that I don't see any inconsistencies in the record at all. I think the evidence has been overwhelming both in terms of Mohr anticipating the patent all by itself, and I can get into that in detail if Your Honor would like, or that Mohr in combination with either Causey or Buckeye and probably a handful of other references in the record, but let's just focus on those two. In combination, Causey and Mohr or Buckeye and Mohr together, there's a suggestion of very strong motivation to combine the missing elements, and therefore the patent is invalid, and the court's judgment was correct. The presentation that Mr. Hoffman just got, just presented, did not make sense to me because I don't see any inconsistencies in the record in terms of the secondary considerations or the long-felt need. The record has evidence both, and it's in the record here, both in terms of deposition testimony and several declarations. But they may well have been in the record. Of course, we've heard them. Yes. But the district judge left very little doubt that he wasn't relying on secondary considerations. Well, he did evaluate the secondary considerations. In fact, he was so careful to make sure that he considered all the evidence that he asked the parties to submit supplemental briefing on the secondary considerations factor alone. But that was just commercial success, right? Yes. Let's focus then on long-felt need and copying. Okay. The court's opinion said expressly that he looked at all these factors, and in his mind, the commercial success was the strongest of the secondary considerations, which suggests he considered all of them. And just because he didn't detail- You're referring to page 24 and 25 of the new appendix, now the opinion, the portion of the district court's opinion about- Yes. Yes. All right. Yes. He says he looked at all the factors. He felt the strongest one of those factors was commercial success. And then he went on to say, and that wasn't good enough in light of the overwhelming evidence of invalidity based upon the prior art. You know, the court was not required to detail, and we cited some cases in our brief that showed this. The court was not required to specifically address each factor that Mr. Hoffman raised below. All the court was required to do, and he did do, was consider everything and render his judgment. But on summary judgment, and I think this goes to Judge Newman's point, the court is required to grant all inferences in favor of Mr. Rogers. And the question I have as a follow-on to Judge Newman's is on the copying matter. Were the inferences probable? I mean, what was the other evidence with respect to copying? We had ample evidence in the record that there was no copying, and it wasn't really an inconsistency that would create a material fact dispute. Rogers said below that he gave a tape to Dessa. Dessa looked at it and magically came out with this poll a few months later. We, while we don't agree with it, we assumed it for purposes of the motion. But what we also did was present unrefuted evidence, both in declaration form and in deposition testimony, that showed that Dessa had been working on an extended poll, poll saw product, since the 70s, had specifically included in that consideration using detachable chainsaws. You could take them off and use the chainsaws independently, and that the only thing that was holding them back was they did not, an adequate poll was not yet available. A poll that had the adequate strength, the adequate weight, and an acceptable price. That has nothing to do with the patented invention whatsoever. So it's just, the timing is just a coincidence. Yes. As you can appreciate, a poll that was 25 or 30 or 40 pounds heavy, or that cost $1,000, would not be a successful or an appealable commercial product. Instead, the total poll saw now ended up being about 8 pounds. The poll, the chainsaw itself is only about 6 pounds. It's lighter than many hedge trimmers. And the poll itself is about 2 pounds. And so about the mid-90s... Is this the 1.25 horsepower Remington that you're using as the chainsaw into the commercial device? You've gotten in there, your honor. I know it does use a Remington chainsaw. That's the particular device that's referred to as that. Yes, that is the one, in fact, and that is the chainsaw. I'm just curious if it's the same exact chainsaw. I think it is. The same chainsaw that's in our product was the chainsaw that Mr. Rogers used, specifically because of its light weight. Okay, so that's the 1.25 horsepower. And the real rub was waiting for their proper poll. It has an acceptable strength, weight, and price. And when that came through, and it's unrefuted in the evidence, no matter what inferences you want to accept for summary judgment purposes, it's unrefuted in the record that we had this months before he approached us. Let me ask you this question. We have evidence, as you, I think, correctly said, that in the summer of 1996, August, that the Mr. Longarm poll came to the attention of these employees, and that it was, I think, October, it's undisputed, it was October 15th when Mr. Rogers approached DESA. Do you have any evidence of any activity between August and October on the part of DESA with respect to this project? Yes. We have communications between DESA and its main customer, Home Depot. When originally DESA showed Home Depot a poll in the mid-'90s, and Home Depot rejected it because it wasn't light and strong enough and cheap enough, they went back, they got another poll, they made up another prototype, and they showed it to Home Depot, and they said this was acceptable. And once they had that clearance, they went ahead and launched their commercial program. And what evidence is, could you point me to that evidence? Well, maybe, I don't want to take up your time, but maybe one of your colleagues can. We do have several declarations. Okay, that would be helpful for me. Thank you. Testimony on that. Now, in response to some of your other questions, first of all, Judge Prost, your comments before were exactly right. All of the elements in the prior art were present, and in fact, all of those elements were present in Moore. The only element that Rogers contended below were not part of Moore were the electric chainsaw, the trigger, and the trigger-depression device. And to this day, Rogers continues to contend that Moore does not teach the electric chainsaw. It does. It does. As set forth in our briefs, Moore specifically teaches using, quote, electrically-powered handheld tools to trim tree branches. That's in Column 1, Lines 48 to 49, and goes on to say, But that's not a chainsaw. Pardon? That's not a chainsaw. They make much of the fact that that does not show a chainsaw in that context. Yes, and what the patent goes on to say is that you can use tools besides hedge trimmers. You can use other power tools, as long as they're light enough and they're electric. Yeah, but it doesn't say a chainsaw, and it isn't part of the argument that a chainsaw, they tend to be heavier, they vibrate a lot, they encounter a good deal of resistance. Since this isn't cutting twigs, this is going through branches. Yes, and in fact, the prior art teaches, and a person of ordinary skill would know, that you can, in fact, use a chainsaw on the Moore device. The quasi-prior art patent, for example, remember, Moore said you can use any electrically-powered hand tool. The quasi-patent defines electrically-powered hand tool as an electrically-powered chainsaw. The prior art defines this as part of the tools that can be used for trimming trees. But you see the problem and the thing that's troubling me. With hindsight, after we see Mr. Rogers' design that works, all of a sudden out comes such a tool by the very people to whom he showed his design, using all of the elements that are in his patent. I gather, although the trial court didn't reach infringement, that infringement could be fairly straightforward if the patent survives. I guess I don't know the answer to that, and I don't want to ask you to say something that doesn't have to be said. But even just making that assumption, the circumstances here are difficult, aren't they, to overcome. That's why I thought Judge Bryson's inquiry as to activity in this period before Mr. Rogers showed that it could be done and how to do it would be helpful. Because, again, with such activity, I didn't recall that there was any defense of prior knowledge raised, only that we maybe were working on it, except the record shows that Tess had been working on it for a long time, so that doesn't help. Again, I make these comments in the context of summary judgment. Yes, I appreciate that. Now, again, I think the evidence was fairly overwhelming that Tess was aware of all of this, and the only thing that they were missing was this adequate poll, and they were informed of that well before Mr. Rogers even- And I don't recall your brief saying that the entire structure and everything else existed with a trigger in the handle and all of the details which are in the claim. I don't recall that in your briefs. It did have various different prototypes. In fact, one of the prototypes that it showed, Home Deco, I think in 1995 or 1996- Did you present that in your brief? Yes, ma'am, and it's in a declaration, too. Let me find it. I'm sorry, I have to try to find this very quickly, but there was a declaration from somebody from Home Depot that specifically says, in 1995 or 1996, that Dessa had shown him a prototype with these elements except- Do you have the place in the record? Yes, ma'am. Let me find it. As I must say, I don't recall the position that absolutely everything was there except the poll was too heavy. I'm having a little difficulty, I apologize, finding it on the spot. Here it is. It's a declaration of Steve Janssen. The declaration starts at A885 and continues to A886. In paragraph 4 of that declaration, Mr. Janssen, who is a vice president of merchandising at Home Depot, says, In 1995, or the first half of 1996, again, well before Mr. Rogers claimed to have contacted Dessa, I met with Dessa in Chicago. During that meeting, Dessa showed me an electric pole saw which incorporated a removable and independently operable electric chainsaw mounted on a telescoping pole. This is the claimed invention. Dessa proposed that the pole saw be sold by Home Depot. I rejected Dessa's proposal because, as I told Dessa at that time, the electric pole saw was too heavy and consequently would be unsafe and difficult for the user to control. Did he talk about all the other claim limitations? That is, the trigger and the other things which are claimed in combination? It's not spelled out in that much detail in this declaration, but it has to have been there. It's inherent. If you have a telescoping pole with a chainsaw on one end and a remote switch on the bottom to turn it on and off, a chainsaw, by definition almost, because Underwriters Laboratories requires this and every chainsaw has this, a chainsaw, by definition, has a trigger switch. It's a safety feature. This is a dead man's switch. Yes, that's exactly right. So you have to have that. So the only way that this tool would even work would be having a trigger depression device, and Rogers doesn't dispute this, that it would be inherent in a pole saw with a chainsaw. You need to have a trigger depression device, it's necessary to have one, to keep the chainsaw turned on on the top end of the pole so when the operator wants to use it and pushes the on-off button on the bottom of the pole, the tool works. So those items, although not spelled out directly in the declaration, were inherent in what they showed Home Depot a year or so before Rogers contacted DESA. Graph summary judgment on claim elements on which there's no evidence? Well, I think there is evidence, and the other thing to recall, Your Honor, is the evidence of the prior art is so overwhelming the court is allowed to review the prior art and weigh in the secondary considerations, and here, when you have the Moore patent, which doesn't say chainsaw directly but uses a phrase that people skilled in the art, and in fact the prior art defined as a chainsaw, and there are other items of prior art that have chainsaws on poles like the Causey patent and like the Buckeye device, which are chainsaws and poles. I mean, Judge Bryson was exactly right there. The only items missing from the Causey patent were a telescoping pole and an internal coiled cord. The Moore patent expressly teaches the desirability of using both of those features in the Causey device. It specifically says you need to have a telescoping pole so you can reach the hard-to-reach places, and you need to have an internal coiled cord so the pole can be extended and contracted without ripping the cord and without ripping the cord away from the electronics and without dangling from the outside so it won't get caught up in branches and trees. So what I'm suggesting—yes, sir. I'm sorry, I think you want to say something. I was just going to say, even if the court gave some credit to the allegation of copying, that can be overcome by the overwhelming evidence of prior art invalidity in the record, and that's what Judge Fikens did. You mentioned in your brief, and again you've repeated here, that the, I guess the standard, what is it, the UL standard? Underwriter Laboratory? Right, requires a trigger switch on chainsaws. Is there evidence in the record to that effect? Yes. Could you point me to that? Yes. There's a question as to whether a chainsaw inherently has a trigger switch. If that's required of any commercial chainsaw, then that would be evidence pertinent to that question. Yes, and again, I don't think Rogers disputes this, but there is a declaration that submits the underwriter's laboratory requirement. And it actually has the copies. I was actually just looking at it as I was answering his questions. It is, it's the same declaration, a second declaration of Dave Fisher that starts the appendix at A844. And if you go to A847 and A848, and apparently A849, this is the UL standard for electric chainsaws. And in there, in a section, it's page 848, it's paragraph 24.4. It talks about the on-off switch should be of a certain type and of a certain construction. And the point of this, as you say, Judge Bryson, it's a dead man's switch. The point is, if you drop it or you fall, the chainsaw turns itself off. I mean, it's an obvious safety feature. And in fact, UL has required that since 1986. Okay. Any more questions? Let me ask you, just as an aside, another issue, which is the claim construction by the district court judge. Is there any question that the district court, is there any dispute, and I should ask the other side of this too, that the district court simply accepted Mr. Rogers' claim construction? Because there is a lot of claim construction analysis in the opinion, followed by a statement that he's accepting the appellant's claim construction. Yes, and what happened was, the procedure was as follows. DESA filed a motion for summary judgment of non-infringement, urging certain claim constructions. Rogers came back with his own cross motion for infringement, urging different constructions. We saw those constructions, and we filed yet, I'm sorry to say, another motion, this time for summary judgment of invalidity, saying that if Rogers' claim constructions were correct, the patent is invalid. It's so broad, it would be invalid. And in fact, as we filed that motion, we told the court that defendants would accept Rogers' claim constructions for purposes of that motion. And that's, in fact, what the judge did. And I believe he discusses that a little bit in his opinion. But that's exactly what he did. And so, what we have before us today are basically the accepted claim constructions that were urged by Rogers in the court below. Does that answer your question, Judge? Good. Thank you, Mr. Whitcuff. Thank you, Judge. Mr. Hoffman, we'll give you your full rebuttal time. We ran over with Mr. Whitcuff. I have an answer to your question, if I'm allowed. A further answer to your question, if I'm allowed to give it to you. Well, that would, the citation, is that what? Yes. Yes, if you could give me the citation. Yes, I'm sorry. Please, or read it into the microphone. Okay. I'm sorry, Judge Boyson had asked us to find it. In addition to the items I already read before to answer your question. Just the citation, please. It's, the page is A856. Good. Thank you, Mr. Whitcuff. That's all you need? Okay. Thank you. Mr. Hoffman. Thank you, Judge. I'd like to start off by addressing the UL standard and its permits here. The UL standard was brought in to show that Moore had to be a chainsaw because chainsaws require, I'm sorry, that Moore had to have a trigger depression device. Because since chainsaws need trigger depression devices, the argument goes, or need triggers, the argument goes that Moore inherently has a trigger depression device. The problem is the answer presupposes the issue. Moore doesn't show a chainsaw, so there's no requirement that there be a trigger for a trigger depression device. We've shown other hedge trimmers that have simply on-offs, which is, as even is acknowledged by their expert, Dr. Radcliffe, in defining the drake and the bantha pads, both of them. But would you agree that if a device such as CAUSE, which actually recites a trigger device, but if it didn't recite a trigger device, it would be inherent in the use of a commercial chainsaw? I have no doubt, no disagreement with that. So really, as an independent limitation, it loses independent significance. If you accept the notion that the Moore reference to other devices incorporates a chainsaw, I recognize you don't accept that. But if you were to accept that, then you would pick up, with the chainsaw, the trigger device. Is that a fair? I would say that's a fair statement, if you accept that premise. Yeah, I understand that. For the reason you state that, I believe that Moore specifically teaches away from chainsaws just for the reason that it doesn't have a trigger depression device. Therefore, it makes no accommodation for a chainsaw, which, by definition, would require one. So, again, a reason to look away from Moore in the combination. The Janssen declaration that was cited was one that I specifically addressed in my argument. Mr. Janssen says that DESA showed me this product in, I believe, late 1995, early 1996. There's a problem with that declaration. It conflicts with what DESA's own documents say they were doing. DESA says that they ceased all work on the project in 1993, not to be resurrected again until August 1996, after the time Mr. Janssen says, oh, I saw one. If DESA wasn't even working on it, what did they show him? It wasn't the device. Janssen conflicts with what Mr. Rohr says and with what Mr. Fisher says, and, more importantly, with what DESA's own internal documents say. Also, the question about whether or not when DESA resurrected the project, the timing on that is pretty indicative of, I think, what really happened. Your Honor asked, is there any documentation that was submitted between August of 1996 and October of 1996 when Rogers showed him the design? I submit there is none. The only thing that happened was DESA resurrected the project, as identified in a January 3, 1997 memo, A788 in the record. That's where Mr. Polofsky, this specific individual to whom Rogers sent the saw, resurrected the project. So it came after the mid-December date was the last communication between Rogers and DESA. I've addressed the main points I wanted to address. Any more questions? Okay, thank you, Mr. Hoffman, and thank you, Mr. Witkow. The case is taken under submission.